Moncure P.
delivered the opinion of the court.
This is a supersedeas to a judgment of the Circuit court of Fairfax county, rendered in an action of debt, brought by the president, directors and company of the Farmers Bank of Virginia against Eliza J. Gunnell administratrix of Joshua C. Gunnell, on a note for fifteen hundred dollars, made by John M. Johnson, dated Alexandria May 31, 1861, payable sixty days after date, to the order of Alfred Moss, negotiable and payable at the branch of the Farmers Bank of Virginia, at Alexandria, Virginia, endorsed, first by the said Moss, and then by the said Joshua C. Gunnell by the name of J. C. Gunnell, and discounted by the plaintiffs at their said branch, for the accommodation of the maker. The action was brought in October *133 1870. Issue was joined on the plea of nil debit, which was tried by a jury. And on the 9th day of June 1871, verdict and judgment were rendered in favor of the defendant. A bill of exceptions was taken by the plaintiffs to certain rulings of the court in the progress of the trial, and was made a part of the record. The plaintiffs .applied to a judge of this court for a supersedeas, which was accordingly awarded.
The questions arising in the case are, whether due notice of the dishonor of the note was given, by the plaintiffs, the holders, to the last endorser, Joshua C. Gunnell, or his administratrix, the defendant? or, if not, whether a sufficient legal excuse for not giving such notice was shown in the case? The plaintiffs maintain the affirmative, and the defendant maintains the negative of these two propositions. They are presented by the bill of exceptions, which sets out the facts proved on the trial, and the instructions asked for by the parties respectively, and refused or given' by the court. Such of the facts as appear to be material are as follows:
The plaintiffs, to maintain the issue on their part, introduced the promisory note, with the endorsements thereon as aforesaid; also the notarial protest' of said note by a notary public in due form; in the certificate of which protest it was stated, that on the same day on which the notary made presentment, demand of payment and protest of the notes, to-wit: on the second day of August 1861, he deposited in the post-office at Alexandria notice of protest addressed to each endorser, informing him that he was held liable for the payment of said note, one of which notices was directed to “J. O. Gunnell, Fairfax C. House, Fairfax county, Va.” Also proved, that at the time of said endorsement and afterwards, the place of resi *134 dence and post-office of Joshua C. Gunnell, was at Fairfax court-house, Virginia.
To maintain the issue on the part of the defendant, s^e Prove^) that the county aud city of Alexandria, Virginia, were, on the 24th day of May 1861, taken possession of by the military forces of the United grates, and was so held by them during the war, and that Fairfax court-house was in the possession of the military force of the Confederate States; that this state of things continued to exist up to, and after the maturity and protest of said note; that all regular postal communication between said points ceased from the 24th of May 1861, and until after the close of the war in 1865.
The plaintiffs thereupon proved, that Joshua C. Gunnell left Fairfax court-house on the 14th day of October 1861, and when the Confederate forces retreated from Fairfax court-house he went back with them; that he returned to Fairfax court-house about the 25th of December 1861, and remained there one day; that when the Confederate army fell back from Centreville towards Richmond, in the month of March 1862, the said Gunnell went with them; and remained within the Confederate lines till the month of July 1862, when he returned to Fairfax court-house.
The plaintiff's also proved, that the said Gunnell voted for the.ordinance of secession; and that he was seen by several parties in Alexandria in the fall of 1868, remaining there continuously for one week on one occasion; and that he was taken from Fairfax court-house by the United States forces (but whether it was upon this occasion was not shown), and that whilst there he was at the postToffice aud had an interview with the post-master. It was further proved by the said post-master, that he knew the said Gunnell well, *135 and that said post-master filled that office from the 1st of June 1861, until some time after the close of the war; that in 1862, he established a military mail, exclusively for the convenience of the officers and soldiers of the Federal army, and exclusively under military control, from Alexandria to Fairfax courthouse, by which he sent all letters addressed to all soldiers, and to such civilians as he knew; that it was the custom and usage of his office, after the expiration of six weeks, to forward to the dead letter office at Washington, all communications remaining in his office, and which could not be forwarded to their address by reason of military operations; that it was the custom and rule of the general post-office department at Washington city, to return to the writers of the same, all lettei’s which the officers of said department thought contained anything valuable.
The plaintiffs also proved by the cashier of the branch of the said Farmers Bank of Virginia, at Alexandi’ia, that he was in the habit, and that it was his duty, of receiving and opening all letters of said bank, and that no letter containing the notice of protest of said note, addressed to the said Alfred Moss and Joshua O. Gunnell, was ever received by him from the dead letter office; that he ceased to be cashier of said bank on the 10th day of April 1862; and by a resolution of the board of directors of said bank, on that date the said branch bank ceased all further banking operations, and all its assets were turned over to three persons to take charge of; and that thereafter, said branch bank never resumed its banking operations.
The plaintiffs then read as evidence to the jury a check drawn by Joshua C. Gunnell, dated Alexandria, July 5th, 1862, for $750, on the branch of the Farmers *136 Bank of Virginia at Alexandria, payable to John M. Johnson or order, and endorsed “J. M. Johnson;” which check was presented at the bank and paid. The plaintiffs further proved that in March 1862 Joshua C. Gunnell said that he was under heavy liability for John M. Johnson, and for another large debt for other partieS) the payment of which would ruin him; and that in order to provide against which he had executed a deed of trust, dated March 13th, 1862, a copy of which was read in evidence to the jury, and is inserted in the bill of exceptions.
And thereupon the plaintiffs asked the court to give to the jury five several instructions, which the court refused to give; but gave another in lieu of the second. To which action of the court the plaintiffs excepted. The defendant then moved the court to give to the jury two several instructions, which the court aecordingly gave; and the plaintiffs again excepted.
We will notice these several instructions in the order in which they were offered and refused or given; and express, in the same order, an opinion on the questions involved therein; and first, as to the five instructions asked for by the plaintiffs, and the one given by the court in lieu of the second.
“Ho. 1. If the jury shall believe from the evidence, that the defendant endorsed the note sued on, and the same was presented at its maturity, at the office of discount and deposit of the Farmers Bank of Virgina at Alexandria for payment, and the same was not paid, and that said note was then and there duly protested, and that notice of said non-payment and protest was deposited in the post-office in Alexandria, on the 2d day of August 1861, addressed to the defendant at Fairfax court-house, Virginia, and that the said courthouse was his place of residence, then they must find for tlie plaintiffs.”
*137 The principle embodied in this instruction is believed to be true as a general principle of commercial law, according to what is said in the petition for a supersedeas in this case: “ that when the endorser of a note has his domicil and post-office at a distance from . the bank at which the note is payable, notice of nonpayment and protest duly mailed, and directed to the endorser at his regular post-office, fixes absolutely his liability. It is not necessary that the holder should show that the notice of protest ever reached the endorser; and under the rule above stated, it is, indeed, wholly immaterial whether he ever received it or not.
The posting the letter containing the notice properly directed, is all that it is obligatory on the holder to do to render the endorser liable.” This general principle would have applied to the case, if the usual and regular mail intercourse between Alexandria and Fairfax court-house had not been obstructed by war or otherwise when the note in question was dishonored. But it was obstructed by war at that time, and continued to be so obstructed until the end of the war, in 1865. The principle, therefore, does not apply to the case. The posting of a letter properly directed, containing the notice, is generally held to be a sufficient service of the notice, because the mail generally affords the quickest and best medium of communication between patties. It may reasonably be presumed, and the law does presume, generally, that such a letter is duly received. But no such presumption can exist when flagrant war (as in this case) obstructs the mail communication between the places of the parties who have to give and receive the notice. To deposit the notice of non-payment and protest in the post-office at Alexandria, addressed to the defendant at Fairfax courthouse, as stated in the instruction, was, in itself, under *138 the circumstances of the case, no more due service of' such notice, than would have been to deposit it anywhere else in the city of Alexandria. To constitute-sufficient Proof of due service of such notice, it was necessary to show that it was given in due time, afterthe removal of the impediment of war which existed 0f tke dishonor 0f the note. “It must al-
ways be remembered that the excuse of impossibility, on whatever facts it may rest, continues only so long as. the impossibility continues; that is, if a party bound to give notice gives none, because he cannot give it at the regular time, but can give notice at a subsequent period, within which the notice may possibly be of use, he is bound to give it then. In other words, the excuse of an impossibility which is not permanent, is. only an excuse for a delay until the impossibility is removed.” 1 Parsous on Notes and Bills, p. 652. See also Id. 522; and Hopkirk v. Page, 2 Brock. R. 20, and the notes to that ease in the leading cases upon Bills of Exchange and Promissory Notes by Redfield and Bigelow, pp. 430-446. According to these principles, it was held by this court in Billgerry v. Branch § Sons, 19 Gratt. 393, that where notice of demand and refusal to pay was put into the post-office at New Orleans, on the 23d of October 1863, directed to the endorsers at Petersburg, Va., the war being then in progress, and there being no mail communication between New Orleans and Petersburg, the notice was insufficient.
We are therefore of opinion that the Circuit court did not err in refusing to give the plaintiff’s instruction No. 1.
“ 2d. If the jury shall believe from the evidence that, although war flagrant existed between the United States and the so-called Confederate States,the defendant received the said notice of protest and non-pay *139 ment, deposited in the post-office at Alexandria, and addressed to him at Fairfax court-house, then they must find for the plaintiff.”
This instruction is defective; for the reason, if no other, that it affirms the liability of the defendant, without regard to the time when he may have received the notice, or whether he received it in due time or not, even though he may not have received it for several years after the termination of the war. There was no evidence before the jury which would have warranted them in finding that the defendant received such notice during the war, even if it could lawfully have been given during the war; a question which is not necessary to be decided in this case. We therefore think the Circuit court did not err in refusing to give the plaintiff’s second instruction.
But the court in lieu of it gave the following: If the jury shall believe from the evidence that though war flagrant existed between the United States and the so-called Confederate States, the notice of protest deposited in the post-office at Alexandria on the 2d day of August 1861, addressed to J. C. Gunnell at Fairfax court-house, was actually received by him, then they must find for the plaintiff, if such notice was received by him as soon as it would have been received had it been transmitted by ordinary course of mail, after the resumption of the usual mail communication.
This instruction, whether objectionable or not, at all events did not prejudice the plaintiffs. It removed the defect in the plaintiffs’ second instruction, by fixing the time at or before which the notice should have been received to be effectual. The notice would certainly have been effectual had it been transmitted by ordinary course of mail after the resumption of the usual mail communication; and the court by this instruc *140 tion told the jury that the notice was effectual if received by the defendant as soon as it would have been (or, in other words, could have beén) received, had it pe(3ia s0 transmitted.
“3d. If the jury shall believe from the evidence, flat the city of Alexandria and a portion of the county Qjp jT1 airfax, was, at the date of the protest of said note up to the 10th day of April 1862, in the possession of the forces of the United States; and that the defendant was, at and betwmen said dates, all the time within the lines of the forces of the said Confederate States; and that said branch bank at Alexandria, on the 10th day of April 1862, ceased all its banking operations by resolution of its board of directors, and turned all its assets over into the hands, management and custody of three agents; and that said branch bank never afterwards resumed its business; then, in that case, the plaintiff is excused from giving notice of said protest and non-payment.”
The plaintiffs were not excused from giving due notice of the dishonor of the note to the endorser, by the resolution of the board of directors of the said branch bank at Alexandria, on the 10th day of April 1862, to cease all further banking operations and turn over its assets to three persons to take charge of the same; nor by ceasing such operations, and turning over the said assets accordingly; nor by never thereafter resuming said operations.' The coi’poration of the bank and its capacity of suing and being sued still continued to exist, notwithstanding the said resolution or the acts done in pursuance thereof as aforesaid; and the plaintiffs continued to be bound to give due notice of the dishonor of the note, in order to fix the liability of the endorsers thereon. The liability of an endorser is conditional, and the condition *141 must be performed to make the liability absolute. The condition is, that due notice of dishonor must be given to the endorser if it be possible, as was the case here. If it was competent for the plaintiffs as aforesaid to turn all the assets of their branch bank at Alexandria over into the hands, management and custody of three agents, to be administered and wound up by them instead of by a board of directors; then those agents, instead of such a board, would represent the bank in regard to giving notice when necessary, and due notice of the dishonor in this case might have been given through their agency. They were certainly not strangers who were incapable of giving such notice, in the meaning of the cases referred to by the counsel of the plaintiffs. Chanoine v. Fowler, 3 Wend. R. 173; 1 Leading Cases upon Bills of Exchange and Promissory Notes by Redfield & Bigelow, p. 383, and the cases cited in the notes.
We are therefore of opinion that the Circuit court did not err in refusing to give the said third instruction asked for by the plaintiffs.
“4th. If the jury shall believe from the evidence, that at the date and maturity of the said note, Alexandria county and city were in the occupation of the forces of the United States; and that Fairfax courthouse was in the possession of the forces of the Confederate States; and that the defendant was a resident at Fairfax court-house; and that he voted for the ordinance withdrawing the state of Virginia from the United States; and that when the forces of the Confederate States fell back from Fairfax court-house to Centreville, and afterwards from Gentreville towards Richmond, the said defendant fell back with them, and remained within the Confederate lines until May 1862; then that the plaintiff is excused from giving *142 any other or further notice of protest to the defendant ” ant.
We are clearly of opinion that the facts set out in ,fo fourth instruction asked for by the plaintiffs did not excuse them from giving any other or further notice of protest to the defendant, and therefore that Circuit court did not err in refusing to give that instruction.
“5th. If the jury shall believe from the evidence that the note sued on was made, indorsed and discounted in the city of Alexandria, and that at that time the city of Alexandria was in the firm occupation of the troops of the United States, and the defendant, after endorsing the said note and before its maturity, went within the lines held and possessed by the forces of the Confederate States, and remained therein until May 1862; then the plaintiff is excused from giving the defendant notice of protest and non-payment of said note.”
We think the answer given to this instruction in the brief of the defendant’s counsel is conclusive. “ There is no evidence in the case to show where the note was endorsed; and even if it had been shown to have been endorsed in Alexandria the subsequent return of the endorser to his place of residence at Fairfax courthouse, was no ‘ going within the Confederate lines,’ in a sense to impose upon him any disability, or to relieve the plaintiff of any duty. After endorsing the note, the man certainly had the right to go home, without prejudice to his rights under the endorsement. The case in 9 Wheaton 598, McGruder v. The Bank of Washington, cited in the petition for writ of error, was the case of an endorser who left his place of residence after the endorsement; the present is the case of an endorser, who went to, and remained at, his place of resi *143 dence, till after the note was dishonored.” We therefore thiuk the court did not err in refusing to give the plaintiff’s fifth instruction.
As to the two instructions asked for by the defendant and given by the court; they are numbered 7 and 8, and are as follows:
“ ETo. 7. To fix liability upon the endorser, the holder must use diligence in giving him notice of dishonor; and where the holder and endorser reside in different localities, and at the time of dishonor, and for months before and afterwards, the usual and ordinary intercourse by mail between the two is intercepted by a state of war, the holder does not prove due diligence, by proving, simply, that he deposited in his post-office, on the day of the dishonor, a notice of dishonor, addressed to the endorser.”
We think that the law is correctly stated in this instruction, and that it does not contain an abstract proposition, as supposed in the petition.
“ 8th. A state of war which intercepts intercourse by the ordinary and usual course of mail between holder and endorser, excuses the holder from giving notice of dishonor, so long as such interruption continues; but due diligence on the part of the holder requires that he should forward notice to the endorser as soon as the interruption ceases.”
The same may be said of this instruction that was said of “ No. 7.” Its correctness is shown by authorities already cited; and especially by the case of Billgerry v. Branch & Sons, 19 Gratt. 393.
We have noticed all the questions raised in this case in the court below, and there remains but one question to be noticed in the case; which was presented, for the first time, in the petition for a supersedeas.
That question is, “ that under the ordinance of the *144 Virginia convention, passed June 24th, 1861, the said Joshua C. Gunnell remained bound as endorser on said note, although he may not have received notice of' the protest of said note.”
That ordinance is in these words: “ When any city or town wherein a bank is located, shall be occupied, jnyested, or access thereto interrupted by the enemy, or when there is no mail therefrom to the place or places to which notice should be addressed, the parties, to negotiable notes, bills and checks payable in such city or town, shall remain bound after the maturity of' such notes, bills and checks, without demand, protest or notice, as if the requirements of the law in that behalf had been complied with.”
Without considering whether the question as to the-effect of this ordinance is properly raised in the case, we are of opinion that it is conclusively answered by the provision of the constitution of the United States, which declares, that no state shall pass any “ law impairing the obligation of contracts.” And the prohibition extends as well to an ordinance of a convention assembled to form or revise a state constitution, as. to an act of an ordinary state legislature. That due notice of the dishonor of a negotiable note should be given by the holder to the endorser as a condition of' the liability of the latter, is one of the terms of the contract between the parties.
Upon the whole, we are of opinion that there is no-error in the judgment of the Circuit court, and that it ought to be affirmed.
Judgment affirmed.