**Alexandria**

ANNE MELVILLE LUMSDEN MUBARAK

v.

KHALED ABDALLA MUBARAK

No. 1714-91-4

Decided June 9, 1992

COUNSEL

John P. Snider (Donna M. Matthews; Matthews, Snider & Williams, on brief), for appellant.

Khaled Abdallah Mubarak, *pro se.*

OPINION

DUFF, J.—This appeal involves an interpretation of the Uniform Child Custody Jurisdiction Act (UCCJA), Code §§ 20-125 *et seq.* Anne M. Mubarak (mother) contends that the trial court erred in its August 30, 1991 order granting visitation rights to Khaled Abdalla Mubarak (father), in not declining to exercise jurisdiction and in directing that she provide the father with recent photographs of the children. Finding that the UCCJA requires a declination of jurisdiction to the appropriate court of the children's "home state," if such court is ascertainable, we reverse and remand for further proceedings to make that determination.

Khalad and Anne Mubarak were married October 22, 1982, in Rockville, Maryland. Subsequently, they moved to Fairfax, Virginia. Three children were born of the marriage: Chrystal, born July 20, 1983; Kamal, born December 11, 1984; and Hanna, born July 7, 1986. The mother filed a bill of complaint for divorce in the Circuit Court of Fairfax County on February 4, 1988. The father was granted visitation rights with his children and on May 13, 1988, a hearing was held on the mother's motion that the father's visitation be supervised. The basis for this motion was the mother's allegation that the father had threatened to kidnap the children and remove them from the United States. The court denied supervised visitation and, subsequently, the father disappeared with the children, then ages four, three, and one.

On June 24, 1988, based on the mother's petition for a rule to show cause, the court granted her sole and permanent custody of the children and denied the father visitation rights. The parties were divorced by a final decree of divorce entered June 14, 1989. The divorce decree made reference to the order that was entered on June 24, 1988, regarding custody and the denial of visitation.

In August 1988, after the abduction of the children, the mother located them in Jordan and secured their physical custody through

the intervention of the Jordanian government and units of the Jordanian army. The mother then took the children to Great Britain, where they have been living in seclusion to the present time. The record reflects that they are living in Scotland, but the mother has adamantly refused to furnish their location or address. There is no indication in the record that the father knows of their precise whereabouts other than that they are in Scotland.

In 1989, the father voluntarily returned to the United States, surrendered himself, and was charged with parental kidnapping. He pled guilty and was sentenced to a term of five years in the penitentiary with most of the prison term being suspended. In March 1991, the father filed a motion for visitation. The mother countered with a motion requesting the court to decline jurisdiction pursuant to the UCCJA. Following a hearing, the mother's motion was denied. On July 30, 1991, a hearing was held on the father's motion for visitation with the children, at which time the mother renewed her motion seeking to have the court decline jurisdiction. On August 30, 1991, an order was entered finding that the father should have visitation "in the children's community," but subject to such time and conditions as the appropriate court in the United Kingdom might determine. The order did not identify a specific court region or venue in the United Kingdom. The order additionally required the mother to provide the father with recent photographs of the children. It was from the entry of this order that this appeal was filed.

■■■ The mother's first contention is that the trial court erred in not granting her motion to decline jurisdiction under the terms of the UCCJA, Code §§ 20-125 through 146. This statute was approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1968 and was adopted in Virginia, effective January 1, 1980. In *Middleton v. Middleton*, 227 Va. 82, 314 S.E.2d 362 (1984), our Supreme Court first interpreted the Act. In discussing the purpose of the legislation, the Court stated:

> Given this background and upon consideration of the Virginia UCCJA, we think a number of the general purposes of the Model Act appropriately apply to Virginia. We perceive that the Virginia UCCJA was enacted to avoid jurisdictional competition and conflict with courts of other states

in matters of child custody; to promote cooperation with courts of other states so that a custody decree is rendered in a state which can best decide the issue in the interest of the child; to assure that litigation over the custody of a child ordinarily occurs in the state that is most closely connected with the child and his family and where significant evidence concerning his care, protection, training, and personal relationships is most readily available; *to assure that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with a;;other state. . . .*

*Id.* at 92-93, 314 S.E.2d at 367 (emphasis added).

*Middleton* concerned a petition to modify a Virginia divorce decree, entered by the Circuit Court of Chesterfield County, Virginia, that vested custody of the children with the mother, who lived in England with them. The father refused to return the children after visitation in Virginia and petitioned the Virginia court for a change in custody. The mother retrieved the children, returned with them to England, and promptly petitioned the English court to make the children wards of the court and to have their care and control granted to her. She also moved the Virginia court to decline to exercise jurisdiction under the provisions of Code § 20-130. The court denied her motion, holding that it had continuing jurisdiction over the custody issue and that Virginia was the more convenient forum for disposition of the matter. *Id.* at 88-89, 314 S.E.2d at 364-65.

On appeal, the Supreme Court reversed, holding that the general policies of the UCCJA extend to the international arena and that England should be treated as the equivalent of a statutory "home state" under the *forum non conveniens* provisions of the Act, and that the trial court abused its discretion in refusing to decide that the courts of England provided a more appropriate forum for decision of the custody issue. *Id.* at 94-96, 314 S.E.2d at 368-69. The Court expressly noted that the children had lived in England for approximately seven years prior to the litigation, that substantial evidence regarding the present care, protection, and training of the children was more readily available in England, as was evidence about the home, neighborhood, school, juvenile and adult influences on the children. *Id.* at 95, 314 S.E.2d at 368-69.

As in *Middleton,* the mother argues that the trial court should have declined jurisdiction under Code § 20-130. The statute provides, in pertinent part:

A. A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

\* \* \* \*

C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

1. If another state is or recently was the child's home state;

2. If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

3. If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; . . .

Measuring the evidence against the statutory factors in this case, it is manifest that Virginia is not the children's "home state" within the meaning of the UCCJA. They have not lived in Virginia since being abducted to Jordan by their father in 1988. Their schools, teachers, health care providers and day care providers are all in Great Britain. All of the evidence concerning their present needs and circumstances will be found in Scotland. Clearly, all three statutory factors identified in Code § 20-130(C) point to Scotland as the more appropriate forum for determining the visitation issue.

The record reveals that the trial judge acknowledged the difficulty presented in determining visitation rights. He expressed concern about the psychological effect of visitation on the children and concern about how and what they were doing in school, particularly in view of the fact that "the children haven't been in this

jurisdiction for three years." We believe the record supports the mother's argument that the trial court recognized that Great Britain had a closer connection with her and the children than did Virginia.

At the trial of the father's motion for visitation, the evidence showed that he was employed locally and had consistently adhered to the court's order of child support, forwarding checks of $750 per month to the wife's attorney. Father has had no contact with the children and does not know where they reside. The court expressly found that the father had led an exemplary life since his incarceration and subsequent probation. The court also found that the father was no longer in violation of the previous court order denying him visitation because of his abduction of the children. The court, therefore, ruled that "knowing the law that we certainly encourage children to know their parents, even when their parents are not perfect, I conclude that there should be visitation in the childrens' community." The court then made visitation "subject to such time and conditions as the appropriate court in the United Kingdom deems appropriate and after the appropriate court. . . determines that visitation is not detrimental to the children, but is in their best interest."

We hold that the criteria contained in the statute and outlined in *Middleton* required the trial court to defer the exercise of jurisdiction to the appropriate court in Great Britain. Any meaningful determination whether Virginia is the more appropriate forum for the father to assert his visitation rights requires a consideration of the present circumstances of the children, their school and activities schedule, and their present health needs, both physical and emotional. Evidence of these considerations exists in the children's community, not in Virginia.

It was undoubtedly in recognition of this fact that the trial court made visitation in the children's community subject to further findings by the courts of Great Britain. The practical effect of the order of August 30, 1991 was the same as if the court had granted the wife's motion to decline to exercise jurisdiction; the foreign court will ultimately determine if it is in the children's best interest to grant visitation.

However, the mother argues that the father is now armed with a court order holding that he is entitled to some form of visitation

and holding that he is entitled to recent photographs of the children. This exercise of jurisdiction, continues her argument, is contrary to the clear holding of *Middleton*. We agree.

Of concern, however, is the identity of the alternate forum to which jurisdiction should be deferred. The record contains evidence that the mother and children are in Scotland. In a memorandum filed in support of her motion to decline jurisdiction, the mother moved for a stay of the Virginia proceedings so that she might place the issue of visitation "before a court of competent jurisdiction in Edinburgh, Scotland." The record does not furnish the name of the appropriate court. While there exists some intimation that the father might know the children's whereabouts, he adamantly denies this. In short, we cannot tell from this record whether the alternative forum in Scotland is known to the father or is identifiable. We hold that before the trial court should defer jurisdiction to another forum, it should know the identity of that forum.

We, therefore, reverse the final order of the trial court and remand the case for further proceedings to ascertain, if possible, the forum in Scotland having jurisdiction over the children. If such forum can be identified, the trial court should decline jurisdiction pursuant to the provisions of Code § 20-130. However, if the appropriate foreign forum cannot be ascertained, the trial court will have continuing jurisdiction of the cause and the authority to enter all appropriate orders under the circumstances then existing.

Mother also challenges the trial court's action in grant.ng visitation rights, although conditional, because the father has not shown a change in circumstances since the entry of the prior order. While this issue will become moot in the event the trial court, upon remand, ascertains an identifiable forum to which jurisdiction will be deferred, we will address the issue in the event the trial court retains jurisdiction. We find that the record establishes that a sufficient change of circumstances has been demonstrated to allow the court to consider the existing order denying visitation.

Accordingly, the decree appealed from is

*Reversed and remanded.*

Koontz, C.J., and Elder, J., concurred.