COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Bumgardner
Argued at Richmond, Virginia

WERNER SAEMMLER HINDRICHS

v. Record No. 1936-97-2

DIANE FRANCES (HINDRICHS) GODOROV

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. BENTON, JR.
AUGUST 11, 1998

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
John W. Scott, Jr., Judge

> Carolyn M. Grimes (Sharon K. Lieblich, P.C.,
> on briefs), for appellant.
>
> (V. James Ventura; V. James Ventura, P.C., on
> brief), for appellee. Appellee submitting on
> brief.

Upon Diane (Hindrichs) Godorov's motion, the trial judge declined to exercise further jurisdiction over matters pertaining to custody and visitation of the parties' minor children and found that Pennsylvania is a more appropriate forum pursuant to Code § 20-130. Werner Saemmler Hindrichs, the children's father, appeals that decision. The father contends that because these matters have been extensively litigated by the parties in Virginia and because the mother was procedurally barred from making the motion, the trial judge abused his discretion in deferring jurisdiction to Pennsylvania as a more appropriate forum. We affirm the decree.

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

I.

The parties were married in Virginia in 1984 and separated in 1992.  In 1993, a judge entered a pendente lite order granting the mother physical custody of the two children and the father visitation rights.  A final divorce decree was entered in the Circuit Court of the City of Fredericksburg in 1994.  The parties and children resided in Fredericksburg from 1990 until 1994, when the mother enrolled in medical school and moved with the children to Philadelphia, Pennsylvania.  In 1996, the father moved from Fredericksburg and now resides in Fairfax County.

In April 1996, the father filed a petition to enforce visitation.  In May 1997, a day before the hearing on the father's petition was scheduled, the mother filed a petition requesting the court to decline to exercise further jurisdiction in this matter.  The mother alleged "[t]hat the Commonwealth of Pennsylvania is and has been the home state of the minor children since 1994"; that Pennsylvania is "the most convenient forum for the benefit of the minor children and [where] the preponderance of facts and circumstances governing the welfare, development and needs of the minor children are most prevalent"; that the children's counselor for the preceding seven months resides and practices in Pennsylvania; and that the father no longer resides in Fredericksburg, Virginia.

After considering the parties' arguments concerning their respective motions, the judge ruled as follows:

> The children are now and have been for years

residents of the State of Pennsylvania. . . .
This court, . . . pursuant to . . . [Code
§] 20-108, . . . finds that it has provided
the relief that the father is entitled at
this juncture, that if there are any changes
in custody or support [they] are better
addressed in the forum in which the children
reside, and that is not the City of
Fredericksburg. . . .  In fact, neither party
resides in the City of Fredericksburg, nor do
the children reside in the Commonwealth of
Virginia.

The trial judge entered two orders.  The first order set a definite visitation schedule and stated that "[a]ny modifications in visitation are to be resolved by agreement of the parties" or "are to be addressed in the appropriate forum where the children reside."  The second order stated as follows:

[U]pon all of the evidence received in the
collective hearings of these parties before
this Court, it appearing unto this Court that
the home state of the minor children of the
parties . . . is and has been in the
jurisdiction of their residence within the
Commonwealth of Pennsylvania, this Court
hereby DECLINES to further exercise
jurisdiction pursuant to [Code §] 20-130
. . . and finds that the Court of competent
jurisdiction serving the residence of the
aforesaid children is the appropriate forum,
and all further matters regarding the minor
children of these parties are transferred to
said Court for enforcement and/or
modification.

    . . .  The Court declines to further hear
in this forum matters of modification of this
Court's prior Orders, referring same to the
more convenient forum as hereinabove set
forth.

## II.

The questions presented by the father raise the issue

- 3 -

whether the trial judge improperly applied the provisions of the
Uniform Child Custody Jurisdiction Act (UCCJA), Code § 20-125
et seq., in declining to exercise further jurisdiction over
matters of custody and visitation and in holding that a
Pennsylvania court was a more appropriate forum.

The father raises certain procedural matters that we will
address first.  The father alleges the mother provided
insufficient notice of her claims under the UCCJA and that her
petition, filed only one day before the hearing on the father's
petition for modification of visitation, failed to provide the
father with reasonable notice as required by Code § 20-127 and
Fariss v. Tsapel, 3 Va. App. 439, 350 S.E.2d 670 (1986).

The mother's motion required the trial judge to consider
Code § 20-125 et seq. and alleged that the relocation of the
children had constituted the establishment of a new "home state."
The motion also alleged that the children's continued presence
in Pennsylvania for two and one half years made Pennsylvania the
situs of more substantial connections and evidence concerning the
present status of the minor children.

Code § 20-127 provides that "[b]efore making a decree under
this chapter, reasonable notice and opportunity to be heard shall
be given to . . . any parent whose parental rights have not been
previously terminated."  In Fariss, where the mother made her
motion to alter the father's visitation rights for the first time
at trial, we held that "[a]s a parent whose parental rights have

- 4 -

not been terminated, [the father] was statutorily entitled to reasonable notice of the motion to alter his visitation rights with respect to his children – before the decree was entered." Id. at 441, 350 S.E.2d at 672. Although the notice requirements of the UCCJA apply to custody and visitation proceedings, they do not apply, however, to a court's decision declining to exercise jurisdiction and deferring jurisdiction to another state. See Lutes v. Alexander, 14 Va. App. 1075, 1084, 421 S.E.2d 857, 863 (1992). Moreover, the trial judge granted the mother's motion for a continuance on the date of the hearing and, thus, provided the father with adequate time to prepare a defense to the motion to decline jurisdiction.

The father also contends that the mother did not attach to her initial pleading the affidavit required by Code § 20-132. In pertinent part, Code § 20-132 provides as follows:

> A. Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period.[1]

However, the mother's motion, which requested the court to

---

[1]Code § 20-132 applies to the first pleading in a "custody proceeding." A "'[c]ustody proceeding' includes proceedings in which a custody determination is an issue, such as an action for divorce or separation." Code § 20-125(3). A "'[c]ustody determination' means a court decision and court orders and decrees providing for the custody of a child, including visitation rights." Code § 20-125(2).

decline to exercise further jurisdiction, was not the first pleading in this custody proceeding. Rather, it was a petition in an existing and continuing custody case. Therefore, the absence of an affidavit did not preclude the mother from moving the court to decline further jurisdiction.

The father also argues that the trial judge erred in entering contemporaneous orders, one granting visitation and the other declining further jurisdiction. The trial judge specifically indicated that he would only clarify his prior order of visitation by establishing specific dates for visitation so as to ensure visitation pending any application by the father for relief in the more convenient forum. The trial judge refused to modify the prior order by enlarging visitation, and the trial judge directed that the portion of the petition filed by the father seeking enlargement of visitation be filed in the more appropriate forum.

Moreover, by declining to exercise jurisdiction under Code § 20-130, the trial judge was declining "to make an initial or modification decree." The trial judge did not decline to enforce a decree already in existence. Such a decree continues to have a res judicata effect under Code § 20-135 and will be enforced by a court in any state including Virginia. See Code § 20-136. In the present case, the trial judge was declining to modify the decree, not to enforce it.

The father contends that because the trial judge's order

fails to identify the alternative forum in Pennsylvania to which jurisdiction should be deferred, the father is left without a forum to enforce his visitation rights. Citing Mubarak v. Mubarak, 14 Va. App. 616, 420 S.E.2d 225 (1992), the father argues that "before the trial court should defer jurisdiction to another forum, it should know the identity of that forum." Id. at 622, 420 S.E.2d at 228. In Mubarak, we ruled that "the criteria contained in the statute and outlined in Middleton [v. Middleton, 227 Va. 82, 314 S.E.2d 362 (1984),] required the trial court to defer the exercise of jurisdiction to the appropriate court in Great Britain" where the children resided and where evidence of their needs existed. Id. at 621, 420 S.E.2d at 228. However, because the record did not furnish the name of the appropriate court and did not establish whether the alternative forum "is known to the father or is identifiable," we reversed and remanded the case for further proceedings to ascertain the appropriate court having jurisdiction over the children. Id. at 622, 420 S.E.2d at 228.

In this case, counsel for the father told the trial judge that he wanted the order to refer to the specific court that would have jurisdiction and stated that he "would try to find out what that would be, so we are just not referring it to Pennsylvania and then struggling with who ends up with this court order." Counsel for the father stated that he would identify the court, and the trial judge agreed. However, counsel never

identified such court.  The proposed order drafted by the mother's counsel listed the forum as the Court of Common Pleas in Philadelphia, Pennsylvania.  When the father objected to the use of this court, the trial judge instructed counsel to "amend your order . . . to say . . . the appropriate Court in the Commonwealth of Pennsylvania . . . having proper jurisdiction." The final order states that "the Court of competent jurisdiction serving the residence of the aforesaid children[, the Commonwealth of Pennsylvania,] is the appropriate forum."  From the record, it is apparent that the appropriate forum in Pennsylvania is "identifiable" to the father.  The trial judge did not err.

The father also argues that the trial judge had no evidence upon which he could base his finding of inconvenient forum because no testimony was presented at the hearing.  The trial judge specifically ruled that his finding was based upon the collective evidence submitted at all prior hearings.  The motion filed by the mother seeking the decline of jurisdiction alleged certain facts that were not disputed by the father's answer. Each counsel made proffers at the hearing, and each party made informal statements to the trial judge to which no objection was made.  Therefore, from the record as a whole it appears to us that the trial judge had a sufficient basis upon which to make a sound decision.

III.

The Supreme Court has noted that the UCCJA was enacted to serve a number of general purposes.

> [T]he Virginia UCCJA was enacted to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; to promote cooperation with courts of other states so that a custody decree is rendered in a state which can best decide the issue in the interest of the child; to assure that litigation over the custody of a child ordinarily occurs in the state that is most closely connected with the child and his family and where significant evidence concerning his care, protection, training and personal relationships is most readily available; to assure that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state; [and] to discourage continuing controversies over child custody.

Middleton, 227 Va. at 93, 314 S.E.2d at 367.

Under Code § 20-130(A), "[a] court which has jurisdiction [to modify a decree] may decline to exercise its jurisdiction . . . if it finds that it is an inconvenient forum . . . and that a court of another state is a more appropriate forum." The court may decline jurisdiction for, among other reasons, the fact that "another state is or recently was the child's home state;" "another state has a closer connection with the child and his family"; or "substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state." Code § 20-130(C).[2]

---

[2]Code § 20-130(C) provides as follows:

> C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of

- 9 -

"The paramount consideration for a trial court, even on the determination of the most convenient forum to decide child custody and visitation, is the child's welfare." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990).

> In matters of a child's welfare, trial courts
> are vested with broad discretion in making
> the decisions necessary to guard and to
> foster a child's best interests.  A trial
> court's determination of matters within its
> discretion is reversible on appeal only for
> an abuse of that discretion, and a trial
> court's decision will not be set aside unless
> plainly wrong or without evidence to support
> it.

Id. at 328, 387 S.E.2d at 795 (citations omitted).  Thus, when "a trial court makes a determination which is adequately supported by the record, the determination must be affirmed." Id. at 328, 387 S.E.2d at 796.  See also Johnson v. Johnson, 26 Va. 135, 144, 493 S.E.2d 668, 672 (1997).  Furthermore, in our review of a trial judge's custody decision, we view the evidence in the light

---

the child that another state assume jurisdiction.  For this purpose, it shall take into account the following factors, among others:

1. If another state is or recently was the child's home state;
2. If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
3. If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; and
4. If the parties have agreed on another forum which is no less appropriate.

most favorable to the prevailing party below.  See Lutes, 14 Va. App. at 1077, 421 S.E.2d at 859.

The father contends that the trial judge relied solely on the physical presence of the children in Pennsylvania in making his decision to decline jurisdiction.  The father argues that "[u]nder the UCCJA, physical presence of the child as a jurisdictional basis in all but the most extreme cases has been eliminated."  Middleton, 227 Va. at 97, 314 S.E.2d at 369.

In this case, the trial judge cited as his reason for declining jurisdiction that Pennsylvania was the children's "home state" under the UCCJA.  "Although a trial court may fail to specify and recite in its order all the possible reasons and adequate bases for its determination, where it is obvious from review of the record that the trial court's determination was made with the child's welfare as paramount, and it is clear that the decision is in the child's best interests, the determination is not without substantial, competent, and credible evidence to support it."  Farley, 9 Va. App. at 329, 387 S.E.2d at 796.

Reviewing the factors set out in Code § 20-130, it is clear that credible evidence supports the trial judge's decision. First, Virginia is not the home state of the children within the meaning of the UCCJA.  "'Home state' means the state in which the child immediately preceding the time involved lived with . . . a parent . . . for at least six consecutive months."  Code § 20-125(5).  Both children and the mother, the custodial parent,

- 11 -

have resided in Pennsylvania for two and one half years. Second, Pennsylvania has a "closer connection" with the children and "one or more of the contestants," the mother. Id. The children's "contact with Virginia is, and has been for some time, greatly attenuated." Farley, 9 Va. App. at 329, 387 S.E.2d at 796. Third, the most recent evidence concerning the children's care, protection, training, and personal relationships is in Pennsylvania. Pennsylvania is also the place where the evidence concerning the children's future care would develop. See Johnson, 26 Va. App. at 148, 493 S.E.2d at 674. Therefore, Pennsylvania's courts and social services departments have a far greater ability to investigate and provide services to the children. At this point, "for a Virginia court to adjudicate child custody and visitation and to provide for the supervision would require long distance observation and fact-finding, rather than the intimate familiarity and interaction necessary in cases of this type." Farley, 9 Va. App. at 330, 387 S.E.2d at 796-97.

For these reasons, we hold that the trial judge did not abuse his discretion in finding that a Pennsylvania court would be a more convenient forum and in refusing to exercise further jurisdiction in this matter. We therefore affirm the trial judge's decision to transfer jurisdiction.

Affirmed.