COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Beales
Argued at Chesapeake, Virginia


CHRISTOPHER SCOTT SWALEF

                                                            OPINION BY
v.        Record No. 2510-06-1                    JUDGE RANDOLPH A. BEALES
                                                            JUNE 26, 2007
ANDREA ANDERSON


                  FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                                Charles E. Poston, Judge

            Brent L. VanNorman (Hunton & Williams LLP, on briefs), for
            appellant.

            (James R. McKenry; Tina C. Babcock; McKenry, Dancigers,
            Dawson & Lake PC, on brief), for appellee.


        Christopher Scott Swalef (father) appeals a decision of the Circuit Court of the City of

Norfolk in which that court declined to exercise jurisdiction over the issues of custody, visitation,

and support of the four children born during his marriage to Andrea Anderson (mother).  Father

argues that the Norfolk Circuit Court erred 1). "by not extending full faith and credit to the

Minnesota judgment that concluded Virginia had exclusive jurisdiction over the child custody

proceedings between the parties," 2). "in declining to exercise jurisdiction over the issue of

custody, visitation and support of the parties' children," and 3). "in conditioning its decline of

jurisdiction upon initiation of a child custody proceeding in the White Earth Tribal Court."

Finding father's arguments without merit, we affirm the trial court's decision to decline

jurisdiction.

BACKGROUND

Mother and father lived in Norfolk with three of their children throughout most of 2003. At the beginning of November 2003, mother left Virginia and went to live on the White Earth Band of Ojibwe reservation located within Minnesota.[1] Mother is a member of this tribe, and, therefore, the children have been declared tribal members. Mother and the children apparently have remained on the reservation since November 2003.

Father filed petitions in the Norfolk Juvenile and Domestic Relations District Court (Norfolk JDR Court) requesting custody of the children. The Norfolk JDR Court entered a temporary custody order giving custody of the children to father on December 1, 2003. On January 13, 2004, the Norfolk JDR Court denied and dismissed father's petition, vacated and terminated the temporary order, and removed the matter from the docket. That action was not appealed.

On December 4, 2003, White Earth Indian Child Welfare filed an Emergency Removal and Hold petition with the White Earth Band of Ojibwe Children's Court (White Earth Court), asking that temporary physical custody of the children be given to the maternal grandparents. The White Earth Court entered an order on December 22, 2003, making the children temporary wards of that court and giving physical custody of the children to the maternal grandparents. On January 23, 2004, the White Earth Court entered another order, retaining the children as wards of the tribal court, but returning them to mother's care, and ordering that father have no contact with the children, mother, or the grandparents. The White Earth Court order states that father "will need to petition this court for visitation" with the children. That order was not appealed.

_____

[1] Mother was pregnant in November of 2003. She gave birth to a fourth child after leaving Virginia. Although this child has never been in Virginia, no party has questioned the Commonwealth's jurisdiction to determine this child's custody. Given our findings here, we will not address jurisdiction over her custody separately.

On May 4, 2005, mother filed for divorce in a Minnesota state court. Father argued in those proceedings that the Minnesota courts did not have jurisdiction to determine child custody issues between these parties, contending that the Virginia courts had "exclusive and continuing jurisdiction" and, alternatively, that Minnesota should decline to exercise jurisdiction pursuant to its Statute § 518D.208, based on mother's "absconding" with the children from Virginia.[2] The Minnesota Court found that the Norfolk JDR Court order of January 13, 2004, that dismissed father's petition for custody was "unclear" regarding whether that court intended "to decline further jurisdiction over child custody." The Minnesota Court concluded that "[a]bsent a decline of jurisdiction by that jurisdiction, the Commonwealth of Virginia has continuing jurisdiction over the issue of child custody in this matter." The Minnesota Court also found that both Minnesota and Virginia would be inconvenient forums for any custody litigation, but that mother's "conduct is sufficient to warrant her bearing the burden in this matter." The Minnesota Court then refused to exercise jurisdiction over child custody issues "[a]bsent a decline of jurisdiction" by the Virginia courts.

---

[2] Minnesota's Statute § 518D.208 states:

> (a) Except as otherwise provided in section 518D.204 or by other law of this state, if a court of this state has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:
>
> (1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
>
> (2) a court of the state otherwise having jurisdiction under sections 518D.201 to 518D.203 determines that this state is a more appropriate forum under section 518D.207; or
>
> (3) no court of any other state would have jurisdiction under the criteria specified in sections 518D.201 to 518D.203.

Virginia's Code § 20-146.19 has similar provisions.

Father then filed new petitions for custody of the children in the Norfolk JDR Court. On June 1, 2006, that court again declined to exercise jurisdiction over this matter. Father appealed the Norfolk JDR Court's decision to the Norfolk Circuit Court. On September 6, 2006, the Norfolk Circuit Court entered an order declining to exercise jurisdiction over custody of the children. The Norfolk Circuit Court found "the best interests of the children dictate that the custody issue be resolved by the White Earth Tribal Court. That Court has access to the most current information concerning their welfare and needs, and it is also the most convenient forum in which this issue can be resolved." The Norfolk Circuit Court also noted that father should initiate a custody proceeding in the White Earth Tribal Court within sixty days of entry of the Norfolk Circuit Court order. This September 6, 2006 order is the subject of this appeal by father.

ANALYSIS

Appellant's arguments are interconnected. Essentially, he argues that, because Virginia entered the first order affecting custody of the children, Virginia retained exclusive and continuing jurisdiction over their custody pursuant to Code § 20-146.13(A). He contends that the Minnesota Court agreed that Virginia still has exclusive and continuing jurisdiction; therefore, the Norfolk Circuit Court should have given full faith and credit to that Minnesota Court finding and should have exercised jurisdiction over this issue. He also argues that the White Earth Court is not an appropriate forum as that court does not have jurisdiction over non-Native American petitioners. We disagree.

We need not determine whether Virginia still has exclusive and continuing jurisdiction over the custody of these children, either under Code § 20-146.13[3] or under the principles of full

_____

[3] We note, however, that it would be inconsistent with the purposes of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to find that a vacated and terminated temporary order, where the underlying petition is dismissed, is a "child custody determination consistent with Code § 20-146.12" that gives the issuing court continuing jurisdiction over custody. Code § 20-146.13(A); see Code § 20-146.38 (listing the purposes of the Act); see also

- 4 -

faith and credit.[4] Even assuming that Virginia has jurisdiction over the custody of these children, either under the Code or by application of full faith and credit to the Minnesota order, appellant's argument fails because he misconstrues the ruling of the Minnesota Court and misunderstands Code § 20-146.18.

First, the Minnesota Court explicitly found that "*[a]bsent a decline of jurisdiction* by that jurisdiction, the Commonwealth of Virginia has continuing jurisdiction over the issue of child custody in this matter." (Emphasis added.) This holding, if binding on the Virginia courts, does not preclude the Norfolk courts from declining jurisdiction over custody. In fact, the order explicitly notes that the Virginia courts can decline jurisdiction. In short, even if the Minnesota

Middleton v. Middleton, 227 Va. 82, 99, 314 S.E.2d 362, 371 (1984) (noting that the form of an order is relevant when deciding whether a court made an initial child custody determination as defined by the Uniform Child Custody Jurisdiction Act (UCCJA), the predecessor to the UCCJEA).

[4] Courts cannot take or grant jurisdiction where the legislature or a constitution has not given it. As the Virginia Supreme Court has explained:

> Jurisdiction of the subject matter can only be acquired by virtue of the Constitution or of some statute. Neither the consent of the parties, nor waiver, nor acquiescence can confer it. Nor can the right to object for a want of it be lost by acquiescence, neglect, estoppel or in any other manner. . . . and the want of such jurisdiction of the trial court will be noticed by this court *ex mero motu*.
>
> Humphreys v. Commonwealth, 186 Va. 765, 772-73, 43 S.E.2d 890, 894 (1947) (citation omitted); accord Morrison[ v. Bestler], 239 Va. [166,] 169, 387 S.E. 2d [753,] 755[ (1990)].

Bd. of Supervisors v. Bd. of Zoning Appeals, 271 Va. 336, 344, 626 S.E.2d 374, 379 (2006) (ellipse in original). Under this principle, the Minnesota Court cannot confer jurisdiction on the Virginia courts unless the Virginia Constitution or Virginia statutes allow the Minnesota courts to confer such jurisdiction. The principles of full faith and credit do not seem applicable here. See Middleton, 227 Va. at 92-93, 314 S.E.2d at 366-67 (noting that the United States Supreme Court had not clarified whether full faith and credit applied to custody decrees, which in part prompted the creation of the model for the UCCJA and the UCCJEA, while declining to address the impact of the Parental Kidnapping Prevention Act).

order were binding on Virginia courts, that order by its explicit wording allows Virginia to decline jurisdiction.

Second, the Norfolk Circuit Court order is consistent with the Minnesota decree as the holding of the Minnesota Court -- that Virginia has continuing jurisdiction -- certainly also allows the Virginia courts to decline to exercise that jurisdiction under Code § 20-146.18.  Code § 20-146.18 permits a Virginia court to decline the exercise of its jurisdiction over a child custody matter such as the one before us.  Therefore, even if Virginia has jurisdiction over this custody case, a court can refuse to exercise that jurisdiction "if it determines that it is an inconvenient forum under the circumstances and that a court of another state[5] is a more appropriate forum."  Code § 20-146.18 (footnote added).

Code § 20-146.18(B) states:

> Before determining whether it is an inconvenient forum, a court of this Commonwealth shall consider whether it is appropriate for a court of another state to exercise jurisdiction.  For this purpose, the court shall allow the parties to present evidence and shall consider all relevant factors, including:
>
>   1. Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>   2. The length of time the child has resided outside this Commonwealth;
>   3. The distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;
>   4. The relative financial circumstances of the parties;
>   5. Any agreement of the parties as to which state should assume jurisdiction;
>   6. The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
>   7. The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

---

[5] For purposes of the UCCJEA, "[a] court of this Commonwealth shall treat a tribe as if it were a state of the United States . . . ."  Code § 20-146.3.

8. The familiarity of the court of each state with the facts and
issues in the pending litigation.

When reviewing a determination made pursuant to this section, we consider whether the trial

court abused its discretion in making its ruling.  See Middleton v. Middleton, 227 Va. 82, 96,

314 S.E.2d 362, 369 (1984) (applying the abuse of discretion standard); Mubarak v. Mubarak, 14

Va. App. 616, 619, 420 S.E.2d 225, 227 (1992) (discussing Middleton).  We find no abuse of

discretion here.

The evidence is clear that the children have been out of Virginia for several years, living

over 1,000 miles from Norfolk.  Mother and the maternal grandparents are within the jurisdiction

of the White Earth Court.  The Virginia courts have no outstanding order determining custody of

these children, whereas the White Earth Court issued the only existing order relating to custody

of these children.[6]  Mother did initially take the children to the White Earth reservation, but she

did not hide them there.  Father has known where the children are.  He did not appeal the 2004

decisions of the Norfolk JDR Court and the White Earth Court.  Neither party has significant

financial resources.  Although there may be some witnesses in Virginia who can testify about the

children's past, all of the current information regarding their care, education, relationships, and

other matters is located in and around the White Earth reservation.  In addition, the Norfolk

Circuit Court consulted a judge of the White Earth Court regarding these children.  Based on this

---

[6] Father also argues that the White Earth Tribal Court order was issued as an exercise of
its temporary, emergency jurisdiction.  Therefore, he argues, Virginia retains custody over this
issue under Code § 20-146.15.  He also argues, as the Minnesota Court found wife "engaged in
unjustifiable conduct," under the principles of *res judicata*, this Court must find that no
emergency existed when the White Earth Tribal Court acted.  Neither of these arguments was
made to the Norfolk Circuit Court; therefore, they are not preserved for appeal pursuant to Rule
5A:18.  In addition, his argument regarding Code § 20-146.15 is subsumed in his general
argument that Virginia should exercise jurisdiction over custody here, which is addressed in this
opinion.

information, we cannot find that the Norfolk Circuit Court abused its discretion in refusing to exercise its alleged jurisdiction over these custody matters.[7]

Finally, father argues in support of his third Question Presented that the Norfolk Circuit Court should not have deferred to the White Earth Court because the tribal court "has no jurisdiction over [father], who is not a member of the tribe nor does he reside within the exterior boundaries of the reservation." This argument is defaulted for several reasons. First, father did not raise this specific issue before the Norfolk Circuit Court. Although he endorsed the final Norfolk Circuit Court order "SEEN AND OBJECTED TO," we have consistently held that such an objection is insufficient to preserve a specific argument absent some indication in the record that the specific objection was made. See Herring v. Herring, 33 Va. App. 281, 286, 532 S.E.2d 923, 927 (2000) ("Ordinarily, endorsement of an order 'Seen and objected to' is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error."). We find no specific discussion of this point before the Norfolk Circuit Court. Therefore, father did not preserve this argument for appeal. Rule 5A:18.

Furthermore, father fails to comply with Rule 5A:20(d), which requires that a party present on brief the legal principles and relevant authority for each question presented. Father presents no authority to support his position that the White Earth Court can exercise jurisdiction only over tribal members or people residing within the reservation. Father refers to the White Earth Band of Ojibwe Child/Family Protection Code, Chapter II, § 1, but that section allows the tribal court to exercise jurisdiction over "family [that] may wish to make itself subject to the jurisdiction of the White Earth Band of Ojibwe's Children's Court." Father presents this Court with nothing that suggests he cannot petition the White Earth Court for custody of his children.

---

[7] Neither party argues that the Indian Child Welfare Act, 25 U.S.C. §§ 1901-1923, is relevant here. In addition, neither party argues that the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, is relevant here.

In fact, the White Earth Court noted in its January 23, 2004 order that father "need[ed] to petition this court for visitation."

CONCLUSION

We find that the Norfolk Circuit Court acted entirely within its authority when it declined to exercise jurisdiction over the custody petition filed by father. That court did not abuse its discretion when it deferred to the authority of the White Earth Court. We, therefore, affirm the Norfolk Circuit Court's order.

<u>Affirmed.</u>