*353 HUMPHREYS, Judge.
BACKGROUND
Following the trial court’s denial of his motion to suppress,[1] David Smith (“Smith”) entered into an agreement to plead guilty to abduction and forcible sodomy on July 24, 2008. As part of that agreement, Smith reserved the right to appeal the trial court’s denial of his motion. Smith timely filed both his notice of appeal and petition for appeal, but failed to file the transcript from his suppression hearing in the trial court within sixty days after entry of final judgment, as required by Rule 5A:8. Consequently, the transcript for Smith’s suppression hearing is not properly before this Court.
In his petition for appeal, Smith argued that the proper remedy for this Court to apply under these circumstances was to dismiss the appeal for failure to file an indispensable transcript. In fact, before Smith’s petition for appeal was granted, he filed a separate motion to dismiss his own appeal on those grounds. Smith argued that, absent the suppression-hearing transcript, this Court lacked jurisdiction to decide the merits of his appeal. A three-judge panel of this Court granted Smith’s petition for appeal, held his motion to dismiss in abeyance, and instructed the parties to brief whether the appropriate remedy for the failure to timely file an indispensable transcript is to deny the petition for appeal or dismiss the appeal.
In response, Smith argues that the proper remedy for a failure to file an indispensable transcript is to dismiss the appeal while the Commonwealth contends that the failure to provide a sufficient record should simply result in the denial of a petition for appeal. Given our Supreme Court’s holding in Jay v. Commonwealth, 275 Va. 510, 659 S.E.2d 311 (2008), we hold that Smith’s failure to comply with the provisions of Rule 5A:8 is a violation of a non-jurisdictional, though mandatory requirement of the Rules governing the processing of appeals in this Court. Thus, Smith’s failure to present an adequate *354 record sufficient to review the merits of the issues and arguments he presents on brief constitutes a waiver of his question presented and supporting argument. Accordingly, we deny Smith’s motion to dismiss and affirm the decision of the trial court on that basis.
ANALYSIS
At the onset, we note that this appeal is more than a bit peculiar in light of the fact that Smith simultaneously filed in this Court both a petition to appeal his convictions for abduction and forcible sodomy and a motion to dismiss that very appeal. Smith asserts that he did so in order to attempt to avail himself of the provisions of Code § 19.2-321.1. He argues that, if applicable, Code § 19.2-321.1 may allow him to pursue a delayed appeal and, thus, overcome his failure to file the transcript of his suppression hearing as part of the trial court record, which he concedes is indispensable to our resolution of the merits of his appeal.[2]
Prior to its decision in Jay, both our Supreme Court and this Court have historically dismissed appeals when the mandatory requirements of the Rules have not been adhered to, including those cases in which a transcript, indispensable to the resolution of the issue, had not been filed in the trial court. See Fearon v. Commonwealth, 211 Va. 256, 176 S.E.2d 921 (1970); Crum v. Udy, 206 Va. 880, 146 S.E.2d 878 (1966); *355 Smith v. Commonwealth, 32 Va.App. 766, 531 S.E.2d 11 (2000); Price v. Price, 17 Va.App. 105, 435 S.E.2d 652 (1993); Turner v. Commonwealth, 2 Va.App. 96, 341 S.E.2d 400 (1986). In our view, this practice of dismissing, rather than denying, non-compliant petitions for appeal has always been problematic, since the very nature of the petition process mandated by statute contemplates that unless the petition for appeal is granted, there is no need to act on it in any other way than simply denying the petition. It is certainly true that once a petition for appeal or for certiorari has been granted, and in those cases where a petition is unnecessary because an appeal lies as a matter of right, appeals are almost invariably dismissed when an appellate court lacks jurisdiction over the subject matter or the parties. However, in other jurisdictions, the converse is not necessarily true, and the practice of dismissing appeals on non-jurisdictional grounds is not at all unusual among our sister appellate courts.[3] Nevertheless, our Supreme Court adopted a different position in Jay, and its holding in this regard is both final and binding on this Court.
The holding of Jay could hardly be clearer, “[b]y dismissing rather than denying the appeals, the Court of Appeals rendered the requirements of Rule 5A:20(e) jurisdictional.” 275 Va. at 517, 659 S.E.2d at 315 (emphasis in original).[4] While it *356 is true that Jay specifically refers to Rule 5A:20(e), if the term “jurisdictional” has any consistent meaning, we see no rational reason why this principle should not also apply to Rule 5A:8.[5] Jay commands that we not dismiss an appeal except on the grounds that this Court lacks jurisdiction, and thus, the resolution of the issue before us turns on the meaning of the term “jurisdictional,” as used in Jay.
*357 “Jurisdiction is a term which can engender much confusion because it encompasses a variety of separate and distinct legal concepts.” Porter v. Commonwealth, 276 Va. 203, 228, 661 S.E.2d 415, 426 (2008). Undeniably, “ ‘[{jurisdiction is a word of many, too many, meanings.’ ” Ghameshlouy v. Commonwealth, 279 Va. 379, 388, 689 S.E.2d 698, 702 (2010) (quoting Ghameshlouy v. Commonwealth, 54 Va.App. 47, 57, 675 S.E.2d 854, 859 (2009) (Haley, J. dissenting)). That said, “[cjourts cannot take or grant jurisdiction where the legislature or a constitution has not given it.” Swalef v. Anderson, 50 Va.App. 100, 106 n. 4, 646 S.E.2d 458, 461 n. 4 (2007) (emphasis added). See also Bd. of Supervisors v. Bd. of Zoning Appeals, 271 Va. 336, 344, 626 S.E.2d 374, 379 (2006); Humphreys v. Commonwealth, 186 Va. 765, 772-73, 43 S.E.2d 890, 894 (1947); accord Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755, (1990). It follows then that a rule of court cannot convey or limit jurisdiction.[6]
Indeed, a court refusing to exercise its jurisdiction or erroneously limiting its jurisdiction, precludes the parties from being able to litigate an issue as surely as if the court was without jurisdiction.
Although a court cannot confer jurisdiction upon itself, it does have the power to determine whether it has jurisdiction.
Gibson v. Gibson, 5 Va.App. 426, 433, 364 S.E.2d 518, 522 (1988) (emphasis added).
The appellate courts of the Commonwealth are not alone in promulgating confusing jurisprudence on this issue. In Kontrick v. Ryan, 540 U.S. 443, 453, 124 S.Ct. 906, 914, 157 L.Ed.2d 867 (2004), the United States Supreme Court recognized that it has created similar confusion in the federal arena, *358 noting that it had been “less than meticulous” in its use of the term “jurisdictional” to describe timeliness requirements. The Supreme Court then observed that “[i]t is axiomatic that court-prescribed rules of practice and procedure, as opposed to statutory time limits, do not create or withdraw ... jurisdiction.” Id. (emphasis added). Again in Bowles v. Russell, 551 U.S. 205, 210-12, 127 S.Ct. 2360, 2364-65, 168 L.Ed.2d 96 (2007), the Supreme Court noted that
[although several of our recent decisions have undertaken to clarify the distinction between claims-processing rules and jurisdictional rules, none of them calls into question our longstanding treatment of statutory time limits for taking an appeal as jurisdictional. Indeed, those decisions have also recognized the jurisdictional significance of the fact that a time limitation is set forth in a statute.
(Emphasis added). In other words, the term “jurisdiction” refers to mandatory requirements prescribed by constitution or statute as a prerequisite to a court taking a case for resolution. What the United States Supreme Court characterizes as “claim-processing” requirements relate to those nonjurisdietional, but nonetheless mandatory, “procedural rules adopted by the Court for the orderly transaction of its business” that are “not jurisdictional.” Kontrick, 540 U.S. at 454, 124 S.Ct. at 914 (quoting Schacht v. United States, 398 U.S. 58, 64, 90 S.Ct. 1555, 1559, 26 L.Ed.2d 44 (1970)) (emphasis added).
This is precisely the situation represented in this case. No rule of court actually conveys, expands or restricts the “jurisdiction” of the courts of the Commonwealth. The Rules of the Supreme Court of Virginia are promulgated under the statutory authority of that Court to “prescribe the forms of writs and make general regulations for the practice in all courts of the Commonwealth; and [] prepare a system of rules of practice and a system of pleading and the forms of process.” Code § 8.01-3. Perhaps our Supreme Court will at some point elect to bring the same level of clarity to the term “jurisdiction” that the Supreme Court of the United States has in the federal arena in Kontrick, but in the meantime, after *359 engaging in the exercise our Supreme Court referred to in Ghameshlouy as “plumb[ing] the murky depths of the sea of ‘jurisdiction,’ ” 279 Va. at 388, 689 S.E.2d at 702, we hold Smith’s failure to file the transcript from his suppression hearing was a violation of a non-jurisdictional, though nonetheless mandatory, requirement of a rule of court.
Here, the flavor of “jurisdiction” that the dissent finds is implicated by Rule 5A:8 is what it describes as “authority jurisdiction.” The dissent uses this term as shorthand for its conclusion that a Rule limiting this Court’s authority to proceed to a decree is by definition jurisdictional. The dissent’s conclusion would dramatically expand the concept of “jurisdiction” while simultaneously making it more amorphous than ever. Moreover, this conclusion would undermine the recent attempts of our Supreme Court to bring at least some measure of order out of what has long been “jurisdictional” chaos.
In Ghameshlouy, the Supreme Court parsed the term “jurisdiction” into what it termed as “potential jurisdiction,” which encompassed:
subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is in rem seizure of a res; and the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree
and “active jurisdiction” which it described as the actual “power to adjudicate a case on the merits.” Ghameshlouy, 279 Va. at 388-89, 689 S.E.2d at 703 (quoting Bd. of Supervisors, 271 Va. at 343-44 & n. 2, 626 S.E.2d at 379 & n. 2) (emphasis added). The Supreme Court’s parsing of the term “jurisdiction” in this manner indicates, in our view, that it intended to convey that the terms “power” and “authority” are not synonymous and that the “authority” of a court to act is dependent upon it having subject matter jurisdiction, personal *360 jurisdiction over the parties, and territorial jurisdiction, as required by the constitution or statute. On the other hand, even where a court has the requisite subject matter, territorial, and personal jurisdiction over the parties, its “power” to actually reach the merits of a case depends upon compliance by the parties with any and all mandatory requirements imposed by the rules of court. Moreover, if as the dissent suggests, the term “conditions of fact demanded by unwritten and statute law” includes the written rules of court, there would be no need for our Supreme Court to create the second category of what it calls “active jurisdiction.”
The dissent cites Rule 1:1 as an example of this concept of “authority jurisdiction.” We certainly must concede that as recently as its decision in City of Suffolk v. Lummis Gin Company, 278 Va. 270, 683 S.E.2d 549 (2009), our Supreme Court characterized Rule 1:1 as a limitation on the exercise of a court’s “jurisdiction.” However, a review of the Supreme Court’s more comprehensive discussions of the concept of jurisdiction found in Ghameshlouy, Porter, Nelson v. Warden, 262 Va. 276, 552 S.E.2d 73 (2001), and Moore v. Commonwealth, 259 Va. 431, 437, 527 S.E.2d 406, 409 (2000), strongly suggests to us that its usage of the term “jurisdictional” in Lummis Gin Co. is simply another example of its use of this term as inartful shorthand for what in reality is more accurately described as a mandatory “claims-processing rule,” the term now used by the United States Supreme Court. Given the basic premise that a rule of court may limit a court’s power to act but cannot create or limit a court’s jurisdiction, in our view, the mandatory time limits contained in the Rules of the Supreme Court, including Rule 1:1, are more properly viewed as regulatory in nature rather than “jurisdictional” in the strict sense of that word.[7] We respectfully suggest that it *362 does no service to the jurisprudence of the Commonwealth to continue to use the term “jurisdictional” to describe what are more accurately described as emphatic time prescriptions in the rules of court designed to superintend and facilitate the orderly and prompt resolution and disposition of matters before the courts of the Commonwealth.
Furthermore, we also disagree with the dissent’s application of its concept of “authority jurisdiction” to Rule 5A:8. By way of analogy, no one would seriously contend that the failure of an appellant to preserve an alleged error by complying with the contemporaneous objection requirements of Rule 5A:18 deprives this Court of either the authority or ability to decide the case on appeal—we simply may not be able to decide it on the merits where the record is silent that the error was preserved for appeal. The same is true here. The failure of a party to file a transcript does not affect our authority to decide the case one whit. We clearly have the authority and thus, even under the analysis of the dissent, the “jurisdiction” to do so and indeed, we routinely fulfill our obligation to decide the merits of appeals when a transcript has not been filed, if the issue is one that can be resolved without it. Since there is no precedent for a “jurisdictional” defect to operate selectively, it seems axiomatic to us that if the failure to file a transcript denied this Court the authority to exercise its appellate jurisdiction, this would necessarily be true in every case where the trial court record lacked a transcript, including those cases that may not require a transcript for resolution of the issue presented. As noted above, Rules 5A:7 and 5A:8 have nothing whatsoever to do with the mandatory requirements for “perfecting” an appeal. Rule 5A:7(a)(7) simply includes a transcript in the definition of the trial court record to be considered by this Court on appeal, and Rule 5A:8 specifies that this occurs when the transcript is filed in the office of the clerk of the trial court within 60 days after entry *363 of the final judgment. Neither Rule 5A:7 nor Rule 5A:8 implicates our authority to decide a case on appeal. Appeals are decided based upon the contents of the record of the trial court, whatever the quality or degree of completeness of that record, either on the merits or based on a procedural infirmity that prevents this Court from reaching the merits.[8]
Accordingly, given the clear mandate of Jay that we may not dismiss an appeal on other than jurisdictional grounds, we hold that Smith’s failure to comply with Rule 5A:8 constitutes a violation of a non-jurisdictional rule requirement. By not filing the transcript of the suppression hearing, which Smith concedes is indispensable to the resolution of his appeal, Smith deprived this Court of an adequate record to address the issue he presents. Thus, we deny Smith’s motion to dismiss his appeal, treat the underlying issue as waived, and affirm the trial court on that basis.

Affirmed.

. Judge James C. Hawks heard the motion to suppress.

. It is not a given that by dismissing his appeal, Code § 19.2-321.1 would apply to this situation. Code § 19.2-321.1 only permits a motion to file a delayed appeal when an appeal has "been dismissed for failure to adhere to proper form, procedures, or time limits in the perfection of the appeal as required by law or by the Rules of the Supreme Court." (Emphasis added). It is arguable whether a violation of Rule 5A:8 relates to the perfection of an appeal. Rules 5A:7 and 5A:8 are silent as to the manner and form by which an appeal is perfected to this Court, but rather relate strictly to the contents of the record in the trial court which, when forwarded to this Court, will simply frame the context of this Court’s decision. Indeed, the Amendments to Part 5A of the Rules of the Supreme Court adopted on April 30, 2010 and effective on July 1, 2010 make this distinction by placing those Rules applicable to the preparation of the record in a different subsection from those Rules which relate to the "Perfection of the Appeal” found in Section E of Part 5A of the amended Rules.

. Appellate courts in other jurisdictions, including the United States Supreme Court, routinely dismiss appeals where: the issue is moot, the appeal has been improvidently granted, or as here, the record is so incomplete as to prevent the Court’s proper consideration of the issue. See e.g. Christian Civic League of Me., Inc. v. FEC, 549 U.S. 801, 127 S.Ct. 336, 166 L.Ed.2d 7 (2006) (dismissing as moot); Gilligan v. Sweetenham, 405 U.S. 949, 92 S.Ct. 1161, 31 L.Ed.2d 227 (1972) (noting probable jurisdiction, but dismissing as moot); see also United States v. Dula, 989 F.2d 772 (5th Cir.1993) (dismissing defendant’s Brady claim for failure to provide a record). The term "dismissed,” in the context of an appeal, is used elsewhere as a generic dispositional term indicating that a party failed to put the appeal in a posture such that the issues can be reached and resolved by the appellate court. Thus, in many other jurisdictions, the dismissal of an appeal has no inherent jurisdictional implications.

. Notably, in concluding in Jay that a dismissal rendered a rule violation jurisdictional, the Supreme Court expressly stated that "to hold *356 otherwise would mean that, if an appellant did not list cases alphabetically in the table of citations as required by Rule 5A:20(a), dismissal of the appeal would be mandated as a jurisdictional matter.” Jay, 275 Va. at 520, 659 S.E.2d at 317. Yet curiously on April 30, 2010, the Supreme Court of Virginia adopted comprehensive amendments to its Rules which, contrary to the holding in Jay, permit, and in some cases require the dismissal of a petition for appeal for failure to comply with various Rules including, among other things, the failure to file a compliant table of contents or authorities. See Rule 5A:26 ("If an appellant fails to file a brief in compliance with these Rules, the Court of Appeals may dismiss the appeal.”); see also e.g. Rule 5A:12(c)(l)(ii) ("If the assignments of error are insufficient or otherwise fail to comply with the requirements of this Rule, the petition for appeal shall be dismissed.”) (Amendments to Part 5A of the Rules of the Supreme Court of Virginia adopted April 30, 2010 and effective July 1, 2010) (emphasis added). Since Jay expressly holds that deficient briefs and other rule violations which are readily curable are not jurisdictional and, thus, ought not result in dismissal of an appeal, the plain language in the amended Rules would seem to be in clear conflict with the holding of Jay and, thus, it may well be that when effective, these amended Rules will have the effect of overruling Jay. However, that is a decision for another day.

. Rule 5A:20(e) requires the appellant to provide this Court, in his opening brief, the principles of law, argument, and legal authority relating to his questions presented. Rule 5A:8 requires the appellant to file the transcript in the trial court within sixty days after entry of final judgment, thereby making the transcript a part of the record. In other words, Rule 5A:20(e) requires that an appellant provide this Court with the issues he wants us to resolve and the arguments and legal authority he asserts to support his position, while Rule 5A:8 relates to the contents of the trial court record we are to use in that endeavor. If we were to adopt the dissent’s reasoning, we would create a conflict in our own jurisprudence by ignoring the fact that this Court recently held that the failure to file a transcript indispensable to the resolution of the merits of the appeal, operates as a waiver of the issue. Shiembob v. Shiembob, 55 Va.App. 234, 246, 685 S.E.2d 192, 198-99 (2009) ("Because the arguments raised by husband are wholly contained within the *357 untimely-filed transcript and are indispensable to the determination of this issue, this question is waived on appeal").

. We disagree with the position of the dissent that the General Assembly has somehow implicitly ceded to the Supreme Court of Virginia its authority to create or limit the jurisdiction of the Commonwealth's courts.

. The dilemma both the dissent and we face involves the reconciliation of facially irreconcilable precedent from our Supreme Court. While the Supreme Court of Virginia in recent years has taken some steps toward refining the concept of "jurisdiction” to its original meaning as "[a] court’s power to decide a case or issue a decree,” Black's Law Dictionary 867 (8th ed.2004), as the dissent correctly points out, in *361 other cases our Supreme Court has used the word “jurisdictional” to apply to several of the mandatory requirements of various rules of court. See Dudley v. Florence Drug Corporation, 204 Va. 533, 535, 132 S.E.2d 465, 467 (1963) ("We have repeatedly held that Rule 5:1, § 3(e) and (f), is mandatory and jurisdictional and a failure to comply with it is fatal to an appeal. Here the plaintiff has flagrantly violated the mandatory requirements of Rule 5:1, § 3(e) and (f), in that the transcript of the oral testimony and other incidents of trial was not tendered to the court below within 60 days after final judgment. Such lack of compliance with the Rule is fatal to the jurisdiction of this Court. Accordingly, the motion to dismiss the writ of error is sustained, the effect of which is to affirm the judgment of the court below.” (internal citations omitted)); see also Towler v. Commonwealth, 216 Va. 533, 535, 221 S.E.2d 119, 121 (1976) ("These are simple, easily understood rule provisions. But they are jurisdictional, and failure to comply therewith will result, as in the present case, in dismissal, either before or after appeal is awarded.”).
Given the apparent conflict between the language used in these cases with the principle, acknowledged by our Supreme Court, that jurisdiction must flow from the authority of the constitution or statute and its corollary that a rule of court may not convey or limit a court’s jurisdiction although it may limit its ability to act, we believe that the use of the word "jurisdictional” in the cases relied upon by the dissent is simply an inartful synonym for the mandatory procedural requirements which regulate the manner in which a court exercises its power—not its jurisdiction. In other words, the legislature determines "jurisdiction,” i.e. the generic power of a court to act at all, under what circumstances, and which court is appropriate for the resolution of various types of cases and controversies. Conversely, the Supreme Court of Virginia, through its statutory grant of rulemaking authority, determines the mandatory or discretionary procedural steps necessary as a prerequisite to process, in an orderly fashion, those cases in the various courts in which they have jurisdiction to act. However, in doing so, the Supreme Court does not, and indeed may not, limit the actual jurisdiction of the courts. Put another way, a court may be unable to act because it has no jurisdiction over the subject matter or the parties in the first place, or it may be unable to act, even where the court has jurisdiction, due to a failure to satisfy mandatory procedural requirements deemed essential to an orderly and expeditious resolution of the case.
To use the dissent’s example, by its plain language, we believe Rule 1:1 does not limit a court’s "jurisdiction,” but rather limits the power of a court, which already has jurisdiction, to modify its final order more than 21 days after its entry. Thus, Rule 1:1 is better understood to be an exercise of our Supreme Court’s constitutional and statutory authority to regulate the judicial system by fixing a mandatory time certain when a case is finally considered concluded in a court with jurisdiction. Such bright-line finality is necessary so that either the prevailing party can enforce a judgment or an aggrieved party can seek relief in a higher court, and Rule 1:1 simply regulates the point in time at which this takes place.
*362 As discussed above, on the facts of this case, this distinction makes a practical difference in the Commonwealth only because Jay holds that a dismissal of a case constitutes a determination that this Court lacks jurisdiction.

. Since it is obvious that in order to dismiss an appeal, there has to be a case before us to dismiss, and since Code § 17.1-407 contemplates a petition process in criminal cases in which the case is not further acted upon by this Court unless a petition for appeal is granted, at least one presumably unintended consequence of the dissent’s position is that this Court would be required to grant, rather than deny, every petition for appeal in which a transcript has not been filed in the trial court as a prerequisite for considering the case for later dismissal.