COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Beales
Argued at Richmond, Virginia


BONNY FOSTER

                                                             OPINION BY
v.        Record No. 2768-07-2          CHIEF JUDGE WALTER S. FELTON, JR.
                                                          AUGUST 12, 2008
DANIEL SEAN FOSTER


                     FROM THE CIRCUIT COURT OF NEW KENT COUNTY
                                    Thomas B. Hoover, Judge

            Henry W. McLaughlin (Central Virginia Legal Aid Society, Inc., on
            briefs), for appellant.

            W. Reilly Marchant (Marchant, Honey & Baldwin, LLP, on brief),
            for appellee.


       Bonny Foster (mother) appeals from a judgment of the Circuit Court of New Kent

County (circuit court) finding that it was not an "inconvenient forum," pursuant to the Uniform

Child Custody and Jurisdiction Enforcement Act (UCCJEA),[1] Code § 20-146.1 *et seq.*, to

determine custody and visitation of the three children born of her marriage to Daniel Sean Foster

(father), and therefore denying her request that it decline to exercise its "home state" jurisdiction

pursuant to the UCCJEA.[2]   She contends the circuit court erred in holding that "Virginia was the

_____

       [1] The General Assembly adopted the UCCJEA, Chapter 305, Acts of Assembly 2001, the
stated purpose of which is to "[a]void jurisdictional competition and conflict with courts of other
states," and to "[p]romote cooperation with the courts of other states to the end that a custody
decree is rendered in that state that can best decide the case in the interest of the child."  Code
§ 20-146.38(A)(1),(2).

       [2] "Home state" is defined in the UCCJEA as "the state in which a child lived with a
parent or a person acting as a parent for at least six consecutive months immediately before the
commencement of a child custody proceeding."  Code § 20-146.1.

appropriate jurisdiction for custody in light of the facts before the court regarding domestic violence" by father.  For the reasons below, we affirm the judgment of the circuit court.

I.

Under familiar principles, "we construe the evidence in the light most favorable to [father], the prevailing party below, granting to his evidence all reasonable inferences fairly deducible therefrom."  Northcutt v. Northcutt, 39 Va. App. 192, 195, 571 S.E.2d 912, 914 (2002).

The parties were married in 1999, and three children were born of the marriage.  For most of their marriage, the parties resided in Virginia in New Kent County.  In early August 2006, mother indicated to father that she was taking the children to Fort Bragg, North Carolina to visit relatives.  Then, without prior notice to father, she took the children to Caribou, Maine, where her mother and other relatives lived.  On September 5, 2006, father filed petitions in the New Kent County Juvenile and Domestic Relations District Court (JDR court) seeking custody of the three children.  Two days later, on September 7, 2006, mother, unaware of father's petition for custody of the children in Virginia,[3] obtained an *ex parte* temporary protective order from the Caribou District Court in Maine (Maine court), alleging domestic violence on the part of father toward her and the three children.  In the same *ex parte* proceeding, the Maine court awarded mother temporary custody of the children.

Consistent with the terms of the UCCJEA,[4] the JDR court communicated with the Maine court to determine which court should continue to exercise jurisdiction over the parties' child custody and visitation issues.  No agreement was reached at that time regarding which court

---

[3] Mother was not aware of father's institution of custody proceedings in Virginia until served with a copy of the petition in Maine.  Father was not aware of mother's institution of custody proceedings in Maine until served with the temporary protective order prohibiting his contact with the three children and mother, and the order awarding temporary custody to mother.

[4] See Code § 20-146.9(A) ("Before finding and exercising jurisdiction, a court of this Commonwealth shall communicate with the court appearing to have jurisdiction in any other state concerning a proceeding arising under this act.").

- 2 -

should exercise or cede jurisdiction. The Maine court continued to exercise its "temporary emergency jurisdiction" based on the children's physical presence in Maine and mother's allegations of domestic violence by father.[5] The JDR court continued to exercise its jurisdiction based on Virginia's status as the "home state" of the children, and awarded physical custody of the children to father. Mother appealed the JDR court's decision awarding father custody of the children to the circuit court.

Pursuant to the UCCJEA, the circuit court discussed the jurisdictional issue with the Maine court. As a result of that discussion, the circuit court determined, "after consideration of all the statutory factors contained in Virginia Code [§] 20-146.18, *including the factor of domestic violence*," that Virginia, as the "home state" of the children, had "exclusive continuing jurisdiction to decide th[e] [parties'] custody case" and that it was "not an inconvenient forum to decide th[e] case." (Emphasis added).[6] The Maine court thereafter entered an order "join[ing]" in the circuit court's determination that Virginia was not an "inconvenient forum" and was the appropriate jurisdiction to determine custody and visitation of the three children. The Maine court declined to continue to exercise jurisdiction, rescinded and vacated its protective order as it pertained to the parties' children, and rescinded and vacated its award of temporary custody to mother.

---

[5] See 19-A M.R.S.A. § 1748(1) (Supp. 2001) ("A [Maine] court . . . has temporary emergency jurisdiction if the child is present in [Maine] and . . . it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse.").

[6] See Code § 20-146.13(A) ("Except as otherwise provided in § 20-146.15, a court of this Commonwealth that has made a child custody determination consistent with § 20-146.12 or § 20-146.14 has exclusive, continuing jurisdiction as long as the child, the child's parents, or any person acting as a parent continue to live in this Commonwealth.").

II.

On appeal of "a determination [of whether Virginia is an 'inconvenient forum'] made pursuant to [Code § 20-146.18], we consider whether the [circuit] court abused its discretion in making its ruling." Swalef v. Anderson, 50 Va. App. 100, 108, 646 S.E.2d 458, 462 (2007). Here, mother contends the circuit court abused its discretion in not finding, pursuant to Code § 20-146.18, that it was an "inconvenient forum" to determine the custody and visitation of the parties' children, based on father's history of domestic violence against her and the children, and that it erred in exercising its "home state" jurisdiction.

Code § 20-146.18 provides that a Virginia court "that has jurisdiction under [the UCCJEA] to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Code § 20-146.18(A). In making this determination, the court "shall allow the parties to present evidence and *shall consider all relevant factors . . .*" listed in Code § 20-146.18(B). Code § 20-146.18(B) (emphasis added). Among the statutory enumerated factors the court is required to consider in determining whether it is an "inconvenient forum" is "[w]hether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child." Code § 20-146.18(B)(1).[7]

---

[7] Mother argues that the eight factors listed in Code § 20-146.18(B) require the court to give weight to each factor in the order that the factors are listed in the statute and that as the domestic violence factor is listed first among the factors, it should be given the greatest weight. Mother provides no binding authority for that assertion, and we are aware of none. We note, for instance, that in its adoption of the UCCJEA, the Tennessee legislature listed domestic violence as the seventh of eight factors to consider in determining whether that state is an "inconvenient forum." See Tenn. Code Ann. § 36-6-222(b)(7). Clearly, where credible evidence supports the assertion of domestic violence, the safety of victims of that violence is an important factor when considering jurisdictional issues under the UCCJEA. See, e.g., Stoneman v. Drollinger, 64 P.3d 997 (Mont. 2003).

Here, the circuit court heard the parties' evidence concerning each of the eight factors, including mother's evidence of domestic violence. In its order finding that it was not an "inconvenient forum," the circuit court expressly stated that it considered the statutory factors, and specifically noted that it considered mother's assertions of domestic violence in determining that Virginia was not an "inconvenient forum."[8] On the record presented on appeal, we conclude that the circuit court did not abuse its discretion in finding that Virginia was not an "inconvenient forum." Moreover, the Maine court, which had earlier entered the emergency protective order based on mother's assertion of domestic violence, concurred with the circuit court's determination that Virginia was not an "inconvenient forum" to determine the custody and visitation of the parties' children, and declined to continue to exercise its jurisdiction under its "emergency order."[9]

From this record, we cannot conclude the circuit court abused its discretion in finding that it was not an "inconvenient forum" to determine the custody of the parties' children. For the reasons above, we affirm the circuit court's order awarding custody of the parties' children to father.

Affirmed.

---

[8] The record on appeal contains a lengthy *ex parte* affidavit of mother attached to her attorney's memorandum of law submitted to the circuit court for consideration. The record also reflects that father was charged with domestic assault, but that charge was *nolle prosequied* in October 2005. Additionally, the guardian *ad litem* reported that father had an "inability to control his temper and[,] as a result, cause[d] traumatic verbal and possibly physical scenes in front of the children." Moreover, the record reflects that the JDR court sentenced father to four days in jail for violating the Maine emergency protective order by making threatening phone calls to mother on October 8, 2006.

[9] See 19-A M.R.S.A. § 1750(2) ("If [a] [Maine] court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter," and if "the court of the state having jurisdiction substantially in accordance with this chapter does not determine that the [Maine court] is a more appropriate forum, the [Maine court] shall dismiss the proceeding.").